DRAKE, J.
| {¡The thirteen-year-old juvenile, C.H., was alleged to be delinquent according to a petition filed by the State on January 29, 2015, pursuant to the Louisiana Children’s Code. The petition was based upon the alleged commission of simple burglary, a violation of La. R.S. 14:62 (count one); simple ci'iminal damage to property (value *569 less than $500.00), a violation of La. R.S. 14:56 (count two); and illegal possession of stolen things (value less than $500.00), a violation of La. R.S. 14:69 (count three). At his adjudication hearing held on March 30, 2015, on all counts, the juvenile was adjudicated delinquent as alleged in the petition. At his disposition hearing held on May 15, 2015, the juvenile was committed to confinement for four years with the Department of Public Safety and Corrections (DPSC) on count one. The commitment was suspended, and he was placed on supervised probation for a period of four years. On counts two and three, on each count, the juvenile was committed to confinement for six months with the DPSC. The term of commitment on each count was suspended, and the juvenile was placed on supervised probation for six months on each count. The juvenile court ordered that the sentences run concurrently with each other and with that imposed on count one.
On appeal, the juvenile argues that the juvenile court erred in denying his motion to suppress and in failing to hold the Baton Rouge Police Department in contempt for its failure to produce evidence. For the following reasons, we affirm the juvenile’s adjudications and dispositions.

FACTS

On January 25, 2015, Baton Rouge Police Department Officer Donald Johnson was dispatched to the 2300 block of Iowa Street in response to a concerned citizen’s call reporting a car burglary in progress. Officer Johnson proceeded to the reported location and observed two black male juveniles behind a |,.¡house. He gave the two juveniles a loud verbal command to lie on the ground. One fled and the other, the juvenile, complied with Officer Johnson’s command. The officer handcuffed the juvenile and performed a pat-down frisk. As a result of the pat-down, Officer Johnson found cash in the juvenile’s right sock. He then picked, up the juvenile from off of the ground, walked with him to his patrol unit, and secured him inside. Once the juvenile was secured, Officer Johnson read the juvenile his Miranda[1] rights.
After being informed of his rights, under Miranda, the juvenile advised that he and the other juvenile, who he refused to identify, were “canvasing” the area and saw a wallet sitting on the passenger seat inside of the vehicle. The two picked up some loose concrete and threw it at the vehicle’s window until it shattered. The juvenile reached inside and grabbed the wallet. He further advised that the cash found inside of his sock came from the wallet. The juvenile told the officer that after he took the money, he threw the wallet on top of the house where he was located. The wallet was recovered from that location and returned to the victim. The juvenile admitted to Officer Johnson that he was counting the money and stuffing it in his sock when the officer arrived.
Officer Johnson observed the vehicle and noted that both the window and door on the passenger’s side were damaged. He left a victim assistance card with his contact information for the owner to reach him. The victim, Demond Warner, testified at trial that his wallet and GPS system were stolen from his 2008 Chevrolet Impala.

*570
J¿MOTION TO SUPPRESS

In his first assignment of ’ error, the juvenile argues that the juvenile court erred in denying his motion to suppress His statement. Specifically, he contends that because there was no probable cause for his';arrest, hi» statement was fruit of the poisonous tree. The juvenile aláo argues that his statement should have been suppressed due to the coercive circum■stances of the arrest, his youth; and the lack of adult intervention.
The juvenile may move to suppress evidence obtained in violation of the Constitution of the United States or the Constitution of Louisiana. La. Ch.C. art. 872, When a juvenile court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the juvenile court’s discretion, i.e., unless such ruling is not adequately supported by reliable evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 28081. However, a juvenile court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
 A peace officer may lawfully arrest a person without a warrant when he has reasonable cause to believe that the person to be arrested has committed an offense. La.C.Cr.P, art. 213 A(3). Probable cause to arrest exists when facts and circumstances within the arresting officer’s knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805, 807 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which ..average men, and particularly average police officers, can be expected to act. State v. Buckley, 426 So.2d 103, 107 (La.1983).
 |,-Probable cause can be based on knowledge supplied to an officer by another person, even if the identity of the informant is .kept confidential. The test used to ascertain the credibility of a confidential informant. who provides facts to support probable cause to make a warrantless arrest is the same as that used to determine the credibility of information derived from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331, 1337 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). To determine whether the information furnished by a confidential informant provides probable cause for an arrest or a search, a court must utilize a “totality-of-the circumstances analysis” and consider, among other things, the informant’s veracity, facts relating to the informant’s basis of knowledge and corroboration of the informant’s information. Illinois v. Gates, 462 U.S. 213, 288, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); State v. Raheem, 464 So.2d 293 (La.1985).
At the hearing on the motion to suppress, which was combined with the trial, Officer Johnson testified that he was dispatched to the 2300 block of Iowa Street and advised that a concerned citizen was watching a crime in progress. Although the identity of the concerned citizen was unknown, his knowledge of the facts was based on his viewing the crime in progress. The citizen indicated that two black male juveniles were breaking into a gray Chevrolet Impala that was parked on Iowa Street.. He advised that the two juveniles broke the passenger-side window and were behind a vacant brown brick house adjacent to the car. Officer John *571 son proceeded to the location provided by the citizen and was able to corroborate all of the information provided by the concerned citizen. The location was a vacant brown brick house, as described. The officer walked around the back of the house and spotted two black male juveniles, as described by the caller. The .two were bent over by the back door of the house, and as soon as they looked up and saw him, one fled. Officer Johnson also saw the victim’s vehicle and noted that its | (¡passenger window was shattered, which was consistent with' the caller’s indication that the juveniles broke into the passenger side of an Impala. Under the totality of circumstances presented, we conclude that there was probable cause for the juvenile’s arrest.
The juvenile also complains that his statement should have been suppressed because of his youth and-the lack of adult intervention. Louisiana Children’s Code article 881.1(B) provides the following factors a court is to consider when ruling on the admissibility of a juvenile’s confession: (1) the age of the child; (2) the education of the child; (3) the knowledge of the child as'to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and to remain silent; (4) whether the child is held incommunicado or allowed to consult with relatives, friends, or an attorney; (5) whether the child was interrogated before or after formal charges had been filed; (6) the methods used in the interrogation; (7) the length of the interrogation; (8) whether or not the child refused to voluntarily give statements on prior occasions; and (9) whether the child has repudiated an extrajudicial statement at a later date. There is no absolute requirement that an attorney or guardian must be present with a juvenile suspect at the time he-makes a statement. Instead, a'totality of the circumstances, standard is used as the basis for determining the admissibility of juvenile confessions. See State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485, 486-90; State v. Harper, 2007-0299 (La.App. 1 Cir. 9/5/07), 970 So.2d 592, 604, writ denied, 2007-1921 (La.2/15/08), 976 So.2d 173. The testimony of a police officer alone ean be sufficient to prove that the juvenile’s statements were freely and voluntarily given. State ex rel. J.M., 99-1271 (La.App. 4 Cir. 6/30/99), 743 So.2d 228, 229-31.
Officer Johnson testified that the juvenile gave verbal acknowledgment that he understood his rights, and there is no indication in the record that the juvenile |7was impaired or otherwise could not understand his rights. Officer Johnson testified that he did not offer any promises or make any threats toward the juvenile. It appears that the juvenile confessed immediately after being ready his Miranda rights. The limited timeframe between the juvenile’s arrest and his confession is strongly indicative of a lack of coercion. Moreover, the presence of an attorney or parent at the time the juvenile .made his statement was not required. See Fernandez, 712 So.2d 485 at 486-90. • The totality of the circumstances supports the conclusion that the juvenile’s statement to Officer Johnson was freely and voluntarily given. Accordingly, we find no error in the district court’s denial' of the juvenile’s motion to suppress his statement. This assignment of error is without merit.

RIGHT TO PRESENTA DEFENSE

In his second assignment of error, the juvenile contends that ■ the juvenile court judge erred in failing to hold the Baton Rouge Police Department in contempt for its failure to produce the video recording from Officer Johnson’s. dashboard camera and audio recordings of the radio traffic between dispatchers and all *572 responding police officers as requested by a subpoena duces tecum. Specifically, the juvenile contends that the juvenile court’s inaction denied him equal access to the court and the right to present a defense because he did not have access to information that could impeach the testimony of the State’s witness.
On February 4, 2015, the juvenile filed a motion for discovery. The State responded that it provided the juvenile with open file discovery and that all documents and tangible objects within its possession had been provided or would be made available to the juvenile. On March 2, 2015, counsel for the juvenile requested that the court issue a subpoena duces tecum to the Baton Rouge Police Department. He sought the video recording from the dashboard camera in Officer Johnson’s police unit. The request also sought a copy of “all radio traffic between [Officer 1 «Johnson’s police] unit and dispatch and any other responding units.”
On March 10, 2015, the juvenile court judge ordered the police department to produce those recordings by March 20, 2015. In response, on March 19, 2015, an assistant parish attorney sent a letter to the juvenile’s counsel which stated, “I have gathered the documents you requested and they will be provided to you' upon payment of the attached invoice.” According to the invoice, the cost of the video from the dashboard camera and the recording of the call totaled $45.00 each. On March 27, 2015, the juvenile filed a rule to show cause why the custodian of the records should not be held in contempt. In the rule, the juvenile’s counsel stated that he informed the parish attorney that because the child was indigent, he was not obligated to pay. According to the juvenile, the assistant parish attorney responded that the juvenile’s indigence was irrelevant.
The juvenile court did not sign the juvenile’s proposed order requesting that the Baton Rouge Police Department’s Chief appear and show cause why the department should not be held in contempt for failure to comply.
On March 30, 2015, when the parties appeared for the adjudication, the district court asked whether defense counsel was going to move for a continuance in order for the parties to address the rule to show cause. The juvenile’s counsel responded that he tried to resolve the matter without the intervention of the court, but that he was now “trying to seek the intervention of the court.” The district court asked whether anyone was present or had received notice, and the State responded in the negative. Because no one from the police department had notice, the court declined to “go forward” with the contempt rule and asked whether the parties wanted to proceed with the adjudication. The State indicated that it was ready to proceed. The juvenile’s counsel responded, “Your honor, you know, I believe the department needs to be put on notice and make a guest appearance for |3you to address that issue with them. I know the State has a witness here.” The court then stated:
And, [the juvenile’s counsel], this is something that can be dealt with separately from a trial from my perspective, and, you know, and whether or not somebody needs to be held in contempt or not. So that — this is a separate issue from the trial. So this is my question is knowing that we’re not going to deal with this today, okay, State is ready for trial, and I want to get — if we’re going to have an argument about whether or not, I just want to know — I just want to know what’s going on. So if you’re ready to go to trial, we’re going to trial, and I’ll about it [sic]. Let’s do it. If *573 not, then we need to have a hearing on why you would not — you want a continuance; let’s do that, too. I’m not — I’m not suggesting we go one way or another.... I just want to know so that I can plan my morning.
The juvenile’s counsel responded, “I’m ready.”
The parties proceeded with the adjudication without the video recording from Officer Johnson’s dashboard camera or the audio recordings. The juvenile’s counsel questioned Officer Johnson with regard to the dashboard camera, and the officer’s testimony established that his unit was equipped with a dashcam that points forward and a camera that points toward the backseat and that the cameras were working on the day of the offense.
In his closing argument, the juvenile’s counsel asked the court to take notice of La. R.S. 15:432,[2] argued that the video from Officer Johnson’s dashboard camera should have been introduced, and claimed that the juvenile was entitled to a presumption that the video would not have helped the State. The State responded that the video was a separate issue and noted that the parties chose to go forward with trial. Prior to adjudicating the juvenile a delinquent, the juvenile court pointed out that the “uneontroverted testimony of the detective” established that the juvenile was found with physical evidence of the crime on his person, 110confessed to the crime, and directed the officer to more evidence. The juvenile’s counsel then objected.
On appeal, the juvenile argues that he proceeded to the adjudication hearing without having access to information that could impeach the testimony of the State’s sole witness. He claims that he was deprived of the right to present a defense and denied access to the court because of his inability to pay. He further contends that the juvenile court “declined to sign the order or to set a hearing.” (C.H.Br.12). However, a review of the record reveals that on the morning of the adjudication, the juvenile court twice asked the juvenile’s counsel whether the matter should be continued in order to obtain a ruling on the contempt matter. The juvenile declined the opportunity to continue and chose, instead, to proceed to adjudication. Thus, he waived any objection to the juvenile court’s failure to hold the Baton Rouge Police Department in contempt. See State v. Maten, 2004-1718 (La.App. 1 Cir. 3/24/05), 899 So.2d 711, 719-20, writ denied, 2005-1570 (La.1/27/06), 922 So.2d 544. Accordingly, this assignment of error is without merit.
ADJUDICATIONS AND DISPOSITIONS AFFIRMED.

. Prior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. Louisiana Revised Statutes 15:432 provides, in pertinent part: "A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him[.]”