STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-347


STATE IN THE INTEREST OF J.J.M.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 27803
HONORABLE W. MITCH REDD, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY
JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED IN PART, VACATED, AND
REMANDED WITH INSTRUCTIONS.**

**Annette F. Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana 70602-1747**
**(337) 436-2900**
**Counsel for Juvenile/Appellant:**
      **J.J.M.**

**John F. DeRosier**
**District Attorney**
**Cynthia Clay Guillory**
**Karen C. McLellan**
**Carla S. Sigler**
**Assistant District Attorneys**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana 70602**
**(337) 437-3400**
**Counsel for Appellee:**
      **State of Louisiana**

**KEATY, Judge.**

This Juvenile appeals the trial court's denial of his motion to suppress and the trial court's acceptance of his admission. For the following reasons, we affirm the trial court's denial of the Juvenile's motion to suppress; however, we vacate the Juvenile's admission, adjudication, and disposition, and remand for further proceedings.

## PROCEDURAL BACKGROUND

In this juvenile delinquency matter, the State asserted by petition filed in Calcasieu Parish, Louisiana, that from approximately 2011 to 2015, J.J.M. [1] (hereinafter "the Juvenile") performed anal, oral, or vaginal sexual intercourse with his younger sister, A.C. (hereinafter "the victim"), without lawful consent. The Juvenile also kissed and touched the victim without lawful consent. The offenses occurred when the Juvenile was nine to thirteen years old and the victim was six to nine years old.

On July 13, 2015, the Juvenile was charged with aggravated rape of a victim under the age of thirteen, a violation of La.R.S. 14:42, and three counts of indecent behavior with a juvenile under the age of thirteen, violations of La.R.S. 14:81. The Juvenile initially denied the charges. On July 31, 2015, the Juvenile filed a motion to suppress the statements made by him to law enforcement. The trial court denied that motion on August 31, 2015. On September 16, 2015, the Juvenile filed a Motion to Determine Competency which the trial court granted. At the competency hearing held on November 16, 2015, the trial court appointed a third

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5–2, "[t]o ensure the confidentiality of a minor who is a party to or whose interests are the subject matter in [delinquent] proceedings, initials shall be used in all filings and in opinions . . . to protect the minor's identity.

doctor to examine the Juvenile because the reports of the two previous examining physicians conflicted. On December 11, 2015, the trial court found that the Juvenile was competent to proceed to trial.

On that same day, the State amended the charge against the Juvenile to simple rape, a violation of La.R.S. 14:43. Pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970), and *State v. Crosby*, 338 So.2d 584 (La.1976), the Juvenile entered an admission to simple rape and one count of indecent behavior with a juvenile under the age of thirteen. The two remaining charges of indecent behavior with a juvenile were dismissed. Following the trial court's acceptance of the admission, the Juvenile was adjudicated a juvenile delinquent. The trial court imposed its disposition, ordering the Juvenile to be placed in the custody of the Department of Public Safety and Corrections, Office of Juvenile Justice, for a period of time not to exceed three years. Placement was to be in a facility best suited for his needs, with an emphasis on sexual behavior. The Juvenile was ordered to have no contact with the victim until it was deemed appropriate by a counselor.

The Juvenile filed a Motion for Appeal on December 11, 2015, asserting the following assignments of error:

1)   The juvenile court erred in not suppressing the statement made by J.J.M. to law enforcement.

2)   The juvenile court erred in accepting the *Alford* plea entered by counsel for the juvenile without advising J.J.M. of both his constitutional rights, generally referred to as *Boykin* [*v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969)] rights, and the rights required by La.[Ch.]Code art. 855, and assuring that the plea was knowingly and voluntarily entered by J.J.M.

3)   The juvenile court failed to personally address J.J.M. as statutorily required and failed to obtain from him a valid waiver of his constitutional rights before imposing the disposition.

4) The juvenile court erred in failing to advise J.J.M. of the two[-] year period for filing a post-conviction relief application. This issue is an error discoverable on the face of the record and should be considered by this court in its error patent review.

## DISCUSSION

### I.  Errors Patent

The Louisiana Children's Code is silent as to whether a juvenile criminal proceeding is entitled to an errors patent review. This court, however, has found that such a review is mandated by La.Ch.Code art. 104 and La.Code Crim.P. art. 920.[2] *See State in Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. After reviewing the record, we find errors patent which we later address since the Juvenile has raised same in his Assignments of Error numbers two through four.

### II.  First Assignment of Error

In his first assignment of error, the Juvenile contends that the trial court erred in not suppressing his statement made to law enforcement. The Juvenile filed a motion to suppress "any oral, written, or video statements, confessions, and all reports" which the State intended to introduce at trial, arguing that they were obtained in violation of his constitutional rights. The Juvenile alleged that he "did not knowingly, voluntarily, and intelligently waive his Constitutional rights[,]" and

---

[2] Louisiana Children's Code Article 104 provides:

> Where procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with:
>
> (1)  The Code of Criminal Procedure in a delinquency proceeding and in a criminal trial of an adult.
>
> (2) The Code of Civil Procedure in all other matters.

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record.

that the following violations occurred: the statement was given without the presence of an interested parent, adult, guardian, or attorney; and the statement was obtained in a coercive environment where the Juvenile did not feel free to leave.

In Louisiana, a "child may move to suppress evidence obtained in violation of the Constitution of the United States or the Constitution of Louisiana." La.Ch.Code art. 872. At the hearing on a motion to suppress, the State must prove the free and voluntary nature of the statement beyond a reasonable doubt. La.Code Crim.P. art. 703(D) and *State v. Boyer*, 10-693 (La.App. 3 Cir. 2/2/11), 56 So.3d 1119, *writ denied*, 11-769 (La. 1/20/12), 78 So.3d 138. Jurisprudence further provides:

> [Louisiana Constitution Article] I, § 13 incorporates the prophylactic rules of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which require that a prosecutor, before using an accused's confession at trial, establish that the accused was informed of his or her rights against self-incrimination and to have an attorney present at any interrogation; that the accused fully understood the consequences of waiving those rights; and that the accused in fact voluntarily waived those rights without coercion. The constitutional privilege against self-incrimination and the constitutional right to counsel apply to juveniles as well as to adults. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *State ex rel. Coco*, 363 So.2d 207, 208 (La.1978) (recognizing that juveniles are entitled to same constitutional protections as adults).
>
> . . . .
>
> Under the federal constitution, the determination of whether a juvenile's incriminating statements are admissible, as based on a knowing and voluntary waiver of the right against self-incrimination and the right to assistance of counsel, is made on the totality of the circumstances surrounding the interrogation. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). . . . [T]he totality of the circumstances approach mandates inquiry into *all* the circumstances surrounding the interrogation, including "evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the

4

consequences of waiving those rights." [*Fare*,] 442 U.S. at 725, 99 S.Ct. at 2572.

The Louisiana Constitution requires no more. The confession of an accused of any age is valid only if it was given knowingly and voluntarily. The age of the accused, although an extremely important and extremely relevant factor in determining knowingness and voluntariness, is not absolutely determinative, and the rigid invalidation of an otherwise valid confession because the accused has not quite reached the age of seventeen has no federal or state constitutional basis.

*State v. Fernandez*, 96-2719, pp. 3-6 (La. 4/14/98), 712 So.2d 485, 486-87

(footnote omitted).

In Louisiana, the admissibility of a juvenile's confession is codified at

La.Ch.Code art. 881.1(A), which provides:

A confession made by an accused child without a knowing and voluntary waiver shall not be admissible unless the state proves beyond a reasonable doubt that it was freely and voluntarily given and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.

Louisiana Children's Code art. 881.1(B) provides:

In making this determination, the court shall consider all of the following:

(1) The age of the child.

(2) The education of the child.

(3) The knowledge of the child as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and to remain silent.

(4) Whether the child is held incommunicado or allowed to consult with relatives, friends, or an attorney.

(5) Whether the child was interrogated before or after formal charges had been filed.

(6) The methods used in the interrogation.

(7) The length of the interrogation.

(8) Whether or not the child refused to voluntarily give statements on prior occasions.

(9) Whether the child has repudiated an extra-judicial statement at a later date.

In *State in Interest of C.H.*, 15-1024, p. 6 (La.App. 1 Cir. 11/6/15), 183 So.3d 567, 571, the first circuit found:

> There is no absolute requirement that an attorney or guardian must be present with a juvenile suspect at the time he makes a statement. . . . The testimony of a police officer alone can be sufficient to prove that the juvenile's statements were freely and voluntarily given. *State ex rel. J.M.*, 99-1271 (La.App. 4 Cir. 6/30/99), 743 So.2d 228, 229-31.

The first circuit also found in *C.H.*, 183 So.3d at 570 that:

> When a juvenile court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the juvenile court's discretion, *i.e.*, unless such ruling is not adequately supported by reliable evidence. *See State v. Green*, 94-0887 (La.5/22/95), 655 So.2d 272, 28081 [sic]. However, a juvenile court's legal findings are subject to a *de novo* standard of review. *See State v. Hunt*, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.

At the motion to suppress hearing in this matter, Detective Hope Sanders testified that on July 6, 2015, Corporal Judith Wall called her regarding information received from a counselor that the Juvenile's sister stated that the Juvenile had been raping her. Detective Sanders asked Corporal Wall to request that the Juvenile's mother accompany the Juvenile to the police station to provide a video statement. Corporal Wall then drove them to the police station.

Detective Sanders indicated that she interviewed the Juvenile, with his mother present, beginning at 3:19 p.m. that day. She stated that the Juvenile indicated he understood why he was at the police station. Detective Sanders noted that the Juvenile was advised of his *Miranda* rights prior to the interview, and he and his mother signed the waiver form at 3:23 p.m. Detective Sanders revealed that the Juvenile responded affirmatively when asked whether he could read the

6

English language. She testified that when reviewing the waiver, the Juvenile and his mother placed their initials next to each of the following statements: "Before we ask you any questions, you must understand your rights, and you have the right to remain silent"; "Anything you say can and will be used against you in court"; "You have the right to speak with a lawyer for advice before we ask you any questions and to have him with you during questioning"; and "You can decide at any time to exercise these rights and stop answering any questions or making any statements." Detective Sanders testified that neither the Juvenile nor his mother indicated they wanted an attorney. She stated that the Juvenile and his mother were told that if they could not afford an attorney, one would be appointed to represent them and that they also initialed next to that statement on the waiver. Detective Sanders revealed that she momentarily left the room to allow the Juvenile and his mother to have a private conversation. Detective Sanders testified that upon her return and during the interview neither the Juvenile nor his mother wanted to stop the questioning or exercise their rights.

Detective Sanders stated that during the interview, the Juvenile's mother never coerced the Juvenile to either stop talking or to talk more, although she told him to tell the truth. Detective Sanders indicated that the Juvenile's mother asked him questions "basically . . . trying to get him to just be honest." According to Detective Sanders, the Juvenile did give more information upon being questioned by his mother. Detective Sanders denied using force or coercion on the Juvenile or his mother to obtain the statement. She stated that the Juvenile was not questioned outside his mother's presence, the environment was not coercive, and he was not under arrest at the time his statement was made.

7

The Juvenile's mother testified at the hearing that she remembered going over the *Miranda* rights form and signing it. She stated that neither she nor the Juvenile said they failed to understand those rights. She acknowledged that a video of the interrogation was being made. She indicated that when the police exited the room, she recalled telling the Juvenile not to say anything without the presence of a lawyer, although she did not remember if they were being recorded at that time, and she did not mention that he wanted an attorney when they returned to the room. The Juvenile's mother acknowledged reviewing the rights form, being told the interview could stop at any time, and that a lawyer could be requested. She testified that the Juvenile was not forced to make a statement, he was not threatened, he was not under arrest at that time, all questions were asked in her presence, and she was the Juvenile's guardian. She stated that she did not feel threatened during that time.

The video shows the Juvenile, his mother, and Detective Sanders sitting in a room. The Juvenile stated therein that he was thirteen years old and had completed the seventh grade. Detective Sanders went over the rights form, and the Juvenile agreed that he could read and write the English language. The form included the Juvenile's *Boykin* rights, which he understood except his right to an attorney. Detective Sanders explained that the Juvenile could speak to an attorney before questioning and that the attorney could be present during questioning. The Juvenile indicated he understood that right and initialed the form. The Juvenile's mother also signed the form and did not ask questions during the explanation of the Juvenile's rights. After the form was executed, the Juvenile and his mother were given time to speak to each other about the matter privately, outside the presence of Detective Sanders. Detective Sanders thereafter returned, and the Juvenile's

8

rights were again listed. Another detective asked if Detective Sanders had gone over the Juvenile's rights, and the Juvenile and his mother responded affirmatively. There were no threats, force, or coercion exerted by police on the portion of the video submitted at the hearing. A portion of the Juvenile's videotaped statement was introduced as State's Exhibit 2 and played at the hearing on the motion to suppress.

At the hearing, the Juvenile's counsel argued that the Juvenile's mother was conflicted and questioned whether she was competent at that time to provide legal advice or protect his legal interests. In opposition, the State argued that the Juvenile's mother learned "of everything that was going on as it was unfolding. She really didn't know what had happened. So she didn't really have any conflict as to what happened between the two kids."

The trial court denied the motion to suppress, stating:

> The burden of proof, I believe, is correctly stated by Ms. Williams. It's on the State to prove that the confession was freely and voluntarily given.
>
> There were two bases for the motion to suppress; one, that the statement was given without the presence of an interested parent, adult, guardian, or attorney.
>
> The Court notes that the evidence is clear that [J.J.M.], at the time of this interview, lived with his mother, and I understand there was testimony that he had lived with his grandmother in the past.
>
> The fact is that at the time of the interview, he lived with his mother. And his mother was present, and I cannot imagine a scenario where the intent of that requirement would be to exclude a child's mother from that situation.
>
> Also, the second statement was that -- or the second allegation was that the statements were obtained in an environment that was coercive and the juvenile did not feel free to leave.
>
> The environment, at least leading up to the actual beginning of the statement, the part that we watched today in court on video

9

showed that no sign of any coercion and no evidence or testimony that was brought before the Court today indicated any coercion.

The Court realizes that for a juvenile to be questioned by the police is going to be stressful, and it's going to make mama nervous, and the Court understands that. But, again, coercive [sic] was not shown on the video, any coercion was not shown on the video, and there was no testimony outside the video of any coercion.

On appeal, the Juvenile contends his police statement should be suppressed due to a thirteen-year-old's lack of understanding of rights, lack of sufficient determination of his understanding of his rights, lack of presence of an adult without conflicting loyalties who was interested in his welfare and was able to assist him in understanding the consequences of a waiver of rights, and his overall competency to understand and comprehend the seriousness of the allegations against him and the effect of a waiver of his Fifth and Sixth Amendment rights.

The Juvenile argues that when Detective Sanders advised him of his right to counsel, he indicated he did not understand that right. The Juvenile alleges that Detective Sanders merely reiterated that he could speak to an attorney and have the attorney present during questioning, without elaborating on what role the attorney would serve. He asserts that when asked again whether he understood this right, the response was inaudible on the video. The Juvenile notes that his mother gave her name and phone number and did not speak during the waiver of his rights.

The Juvenile contends that the State was required to prove that a boy of his age could comprehend his rights and the seriousness of the waiver of those rights. Louisiana does not specify the age a juvenile is capable of understanding a waiver of rights form. The Juvenile also asserts that his mother had mixed loyalties between her two children that resulted in a conflict of interest. He argues that his mother's presence during the reading of the waiver form and in their private

conversation should be given little or no weight. The Juvenile notes that Detective Sanders did nothing to determine whether his mother understood the waiver as she was not asked her education level, past involvement in the judicial system, or any other indicators that would suggest that she could properly advise her son of the rights he would be waiving as well the implications of waiving those rights. The Juvenile further asserts that he did not knowingly, voluntarily, and intelligently waive his constitutional rights. However, in his motion to suppress he failed to specifically address his lack of understanding of his rights because of his age or his mother's understanding of the waiver.

"Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress." *State v. Montejo*, 06-1807, p. 22 (La. 5/11/10), 40 So.3d 952, 967, *cert. denied*, 562 U.S. 1082, 131 S.Ct. 656 (2010). Thus, we will not address the Juvenile's claim regarding his mother's understanding of his rights. We will address, however, the Juvenile's claim that his police statement should be suppressed because of his lack of understanding of rights due to his age, i.e., thirteen years old.

In Louisiana, a child must be ten years of age or older for his acts to be considered delinquent. La.Ch.Code art. 804(3). The age at which a child is deemed capable of understanding a waiver of rights is not provided in the Louisiana Children's Code. Louisiana jurisprudence, however, provides guidance.

In *C.H.*, 183 So.3d 567, a thirteen-year-old juvenile argued for the suppression of his police statement due to his youth, the coercive circumstances of the arrest, and the lack of adult intervention. The first circuit affirmed the denial of the juvenile's motion to suppress, stating:

Officer Johnson testified that the juvenile gave verbal acknowledgment that he understood his rights, and there is no indication in the record that the juvenile was impaired or otherwise could not understand his rights. Officer Johnson testified that he did not offer any promises or make any threats toward the juvenile. It appears that the juvenile confessed immediately after being ready [sic] his *Miranda* rights. The limited timeframe between the juvenile's arrest and his confession is strongly indicative of a lack of coercion. Moreover, the presence of an attorney or parent at the time the juvenile made his statement was not required. *See Fernandez*, 712 So.2d 485 at 486-90. The totality of the circumstances supports the conclusion that the juvenile's statement to Officer Johnson was freely and voluntarily given.

*Id*. at 571.

In *State ex rel. J.M.*, 99-1271, p. 6 (La.App. 4 Cir. 6/30/99), 743 So.2d 228, 231, the fourth circuit noted that "[t]he testimony of the police officers alone can be sufficient to prove that the juvenile's statements were freely and voluntarily given." In *State ex rel. J.E.T.*, 09-67, p. 15 (La.App. 3 Cir. 5/6/09), 10 So.3d 1264, 1273, *writ denied*, 09-1245 (La. 7/1/09), 11 So.3d 498 (footnote omitted), this court discussed the juvenile's age as follows:

[T]he jurisprudence has no "magical age" which, in itself, suggests that a juvenile is not capable of understanding the waiver of rights.

The case law is clear, however, that the Juvenile's young age in the instant case, considered alone, is not sufficient reason to exclude his admission. In *State ex rel. Lewis*, 99-960 (La.App. 4 Cir. 6/30/99), 737 So.2d 962, the admission of a thirteen-year-old defendant, made in the presence of his mother, was not excluded based on his age. The appellate court found that the trial court erred in effectually taking "judicial notice of the fact that a thirteen year old cannot understand a waiver of rights form" and in refusing to give any weight to the presence of the defendant's mother. *Id*. at 963. As such, *Lewis* indicates that a juvenile just on the edge of his teen years is not automatically considered to lack the ability to understand a waiver of rights and that the Juvenile's young age is just one consideration in determining his ability to understand.

The totality of the circumstances surrounding the confession in *J.E.T.*, not just age, indicated that the juvenile did not knowingly and voluntarily waive his rights. The

third circuit, therefore, reversed the juvenile's adjudication, vacated his disposition, and remanded the matter for further proceedings. *State ex rel. J.E.T.*, 10 So.3d 1264.

*Age/Understanding*

In this matter, the Juvenile was thirteen years old and had completed the seventh grade at the time of his waiver and police statement. In *C.H.*, 183 So.3d 567, the juvenile was the same age as the Juvenile herein, and the first circuit found his waiver was valid. Just as in *C.H.*, 183 So.3d 567, there was no indication at the hearing on the motion to suppress in the instant case that the Juvenile was impaired or could not understand his rights. The only indication in this matter that there was a problem with the Juvenile's comprehension of his rights occurred when he told Detective Sanders he did not understand his right to an attorney. Detective Sanders, however, explained that right to the Juvenile, who subsequently indicated he understood and initialed the waiver of rights form.

*Interested Adult*

The Juvenile claims his mother was not an interested adult because his sister was the victim of his offenses. The record refutes his claim, as it shows that the Juvenile's mother had no knowledge of his actions prior to the time his behavior was revealed during his confession. There was no indication the Juvenile was ever questioned about the offenses by his mother, and the offenses were not reported to the police by her. The Juvenile's mother was present at the time he gave his statement to police and signed the waiver of rights form.

During the questioning of the Juvenile by the police, his mother told him to tell the truth. In that regard, the supreme court in *State v. Hudson*, 404 So.2d 460, 464, n.7 (La.1981), noted: "If parents' advice to tell the truth requires exclusion of

a juvenile's confession, then virtually no guilty juvenile will ever be convicted on a confession given after consultation with parents." There is also no absolute requirement that a parent be present during a juvenile suspect's statement to the police. *J.E.T.*, 10 So.3d 1264.

*Threats, Coercion, and Intimidation*

After viewing the video statement admitted into evidence, and based on Detective Sanders' and the Juvenile's mother's testimonies, we find that there was no evidence of threats, coercion, or intimidation. There was also no suggestion that the Juvenile's statement was made as the result of fright or despair.

*Totality of the Circumstances*

The totality of the circumstances pursuant to the record reveals the following: The Juvenile was thirteen years old; he had finished the seventh grade; his mother was present with him at the time he was informed of and waived his rights; the Juvenile said he understood his rights; the Juvenile and his mother signed the waiver; there was no indication that the Juvenile's mother acted under a conflict of interest; the Juvenile presented no evidence showing that he suffered from a mental disorder that prevented his confession or statement from being intelligently and voluntarily made; and no questionable behavior was used by the detectives to elicit the Juvenile's confession. Accordingly, we find that the State proved beyond a reasonable doubt that the Juvenile's statement was knowingly and voluntarily made. The trial court did not err in denying the Juvenile's motion to suppress.

## III.  Second and Third Assignments of Error

In his second assignment of error, the Juvenile contends that the trial court erred in accepting the *Alford* plea entered by counsel without advising him of both his constitutional rights and the rights required by La.Ch.Code art. 855 and

assuring that the plea was knowingly and voluntarily entered. In his third assignment of error, the Juvenile contends the trial court failed to personally address him as statutorily required and failed to obtain from him a valid waiver of his constitutional rights before imposing the disposition. Since the assigned errors overlap, we will address them collectively.

The Juvenile contends that the trial court failed to advise him of the factors set forth in La.Ch.Code art. 855 when he entered his admission. He argues that the trial court, therefore, could not be assured that the Juvenile understood the consequences of his plea sufficiently to knowingly and voluntarily waive his rights. The Juvenile also asserts that the trial court failed to inform him of his *Boykin* rights. He further states that the trial court's non-compliance with La.Code Crim.P. art. 556.1[3] invalidates his adjudication and disposition.

---

[3] Louisiana Code of Criminal Procedure Article 556.1 provides:

A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.

(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.

(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

B. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.

In opposition, the State argues that the Juvenile's plea should "possibly be maintained" pursuant to the record. The State acknowledges the trial court's failure to address the requirements of La.Ch.Code art. 855. It contends, however, that defense counsel stated she conferred with the Juvenile, his parents, and her supervisors, and she reserved the Juvenile's rights associated with his plea. The State further declares that "article [556.1] was apparently not complied with," but it "urges this court to remand for a new proceeding at which the trial court *simply* makes the proper advisement and inquiries." (Emphasis added.)

Louisiana Children's Code Article 855 provides, in part:

> A. When the child appears to answer the petition, the court shall first determine that the child is capable of understanding statements about his rights under this Code.
>
> B. If the child is capable, the court shall then advise the child of the following items in terms understandable to the child:
>
> (1) The nature of this delinquency proceeding.
>
> (2) The nature of the allegations of the petition.
>
> (3) His right to an adjudication hearing.

---

> C. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.
>
> D. In a felony case a verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo contendere.
>
> E. Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.

In *In re State ex. rel. A.J.*, 09-477, p. 29 (La. 12/1/09), 27 So.3d 247, 270, the supreme court held: "[E]ven when a juvenile is deprived of liberty in excess of six months, because a juvenile proceeding is distinct from criminal proceeding, neither the Sixth Amendment, nor the Due Process or Equal Protection Clauses of the United States or Louisiana Constitutions require that the juvenile be entitled to a trial by jury."

(4) His right to be represented by an attorney, his right to have counsel appointed as provided in Article 809, and his right in certain circumstances authorized by Article 810 to waive counsel.

(5) His privilege against self-incrimination.

(6) The range of responses authorized under Article 856.

(7) The possible consequences of his admission that the allegations are true, including the maximum and minimal dispositions which the court may impose pursuant to Articles 897 through 900.

On July 13, 2015, the Juvenile's counsel entered a denial to the petition. A review of the record indicates that the trial court failed to comply with La.Ch.Code art. 855 at that time, as it did not directly address the Juvenile at that proceeding.

The failure to comply with La.Ch.Code art. 855 was addressed by this court in *State in Interest of D.B.*, 13-1364, p. 2 (La.App. 3 Cir. 4/23/14), 137 So.3d 1282, 1284, *writ denied*, 14-1092 (La. 1/9/15), 157 So.3d 596, as follows:

> In *State ex rel. C.P.*, 12-192 (La.App. 3 Cir. 6/6/12), 91 So.3d 1273, the court applied the harmless error analysis when the trial court failed to advise the juvenile of his rights under Article 855. In *C.P.*, the court found the error was harmless since the record reflected that the juvenile was represented by counsel when he appeared in court and entered a denial to the charges against him. In the present case, the record indicates that the Juvenile was represented by counsel and denied the allegation. Thus, we find that the error was harmless.

Based on the foregoing jurisprudence, the trial court's failure to comply with La.Ch.Code art. 855, when the Juvenile in this matter entered a denial to the petition, could be considered harmless error. However, on December 15, 2015, the Juvenile's counsel entered an admission to simple rape and indecent behavior with a juvenile. The trial court accepted that admission and adjudicated the Juvenile a delinquent. Accordingly, prior to the entry of his admission, the trial court was required to inform the Juvenile of his *Boykin* rights.

17

The applicability of *Boykin* rights in delinquency proceeding was discussed by this court in *State in Interest of J.G.*, 96-718, pp. 2-3 (La.App. 3 Cir. 12/11/96), 684 So.2d 563, 565, as follows:

> The juvenile was not informed of her right against self-incrimination before she admitted to the charges in the petition. According to *State v. Godejohn*, 425 So.2d 750 (La.1983), if a trial court fails to inform a defendant of his right to a jury trial, of his right to confront his accusers, and of his privilege against self-incrimination, the plea does not meet the due process requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We note that the due process requirements enumerated in *Boykin* have been applied to juvenile admissions in Louisiana delinquency proceedings. *State in the Interest of C.H.*, 595 So.2d 713 (La.App. 5 Cir.1992); *State in Interest of Lucas*, 543 So.2d 634 (La.App. 1 Cir.1989); *State in Interest of Wilkerson*, 542 So.2d 577 (La.App. 1 Cir.1989).

This court in *J.G.* found the *Boykin* colloquy given by the trial court was inadequate and the plea was constitutionally infirm. Utilizing *Godejohn*, 425 So.2d 750, which was overruled on other grounds by *State v. Guzman*, 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1158, this court vacated the juvenile's admission, reversed the adjudication and disposition, and found the juvenile should be permitted to plead anew.

In *State ex rel. R.D.S.*, 10-314 (La.App. 3 Cir. 6/30/10), 43 So.3d 1057, the trial court failed to inform the juvenile of his constitutional rights and his rights under La.Ch.Code art. 855. This court held that failure to inform the juvenile of his rights required that his adjudication and disposition be vacated and the matter remanded for further proceedings. Additionally, "[o]n direct appeal, the court will not presume a valid waiver of rights from a silent record." *State ex rel. Q.U.O.*, 39,303, p. 4 (La.App. 2 Cir. 10/27/04), 886 So.2d 1188, 1190.

In this case, there was no colloquy showing that the trial court informed the Juvenile of his *Boykin* rights prior to or at the time he entered an admission. The

trial court never personally addressed the Juvenile during the admission proceeding, and the Juvenile did not speak at the proceeding. The trial court merely accepted the admission entered by counsel and entered a disposition. The Juvenile's plea, therefore, is infirm. Although the State asks this court to remand the matter to the trial court for the advisement of rights, we find no support in the jurisprudence for this remedy. Based on the cases cited herein, the Juvenile's admission, adjudication, and disposition are vacated, and the matter is remanded to the trial court for further proceedings.

## IV.  Fourth Assignment of Error

In his fourth assignment of error, the Juvenile contends that the trial court erred in failing to advise him of the two-year period for filing an application for post-conviction relief. He asserts this issue is an error discoverable on the face of the record and should be considered by this court in its errors patent review. He asks that the matter be remanded, and the trial court directed to advise him of the provisions of La.Code Crim.P. art. 930.8.

In response, the State admits that the trial court failed to inform the Juvenile of the provisions of La.Code Crim.P. art. 930.8. It suggests, however, that this court order the trial court to send written notice to the Juvenile advising him of the law with a copy of the notice filed into the record.

Louisiana Code of Criminal Procedure Article 930.8(C) requires the trial court to inform a defendant at the time of sentencing that he has two years to file an application for post-conviction relief. Although the Louisiana Children's Code contains no similar provision, this court has previously held that this notice should be given to juveniles. *See J.C.G.*, 706 So.2d 1081; *State in Interest of C.C.*, 13-417 (La.App. 3 Cir. 10/9/13), 124 So.3d 56.

19

In this matter, the trial court failed to inform the Juvenile of the two-year prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Accordingly, the trial court is instructed to inform the Juvenile of the provisions of La.Code Crim.P. art. 930.8. if a disposition is imposed on remand.

## DECREE

We affirm the trial court's denial of the Juvenile's motion to suppress, vacate the Juvenile's admission, adjudication, and disposition, and remand the case to the trial court for further proceedings consistent with this opinion. The trial court is also instructed to inform the Juvenile of the provisions of La.Code Crim.P. art. 930.8. if a disposition is imposed on remand.

**AFFIRMED IN PART, VACATED, AND REMANDED WITH INSTRUCTIONS.**