ROLAND L. BELSOME, Judge.
h Michael Cameron, the Defendant, seeks this Court’s review of his conviction and sentence. He was charged with a violation of La. R.S. 14:30.1, second degree murder. A jury found him guilty as charged, and he was sentenced to life imprisonment, at hard labor, without benefits.

Statement of the Case

On November 29, 2010, Eric Roy was attending a concert at the Republic nightclub in New Orleans. While in the V.I.P. section of the club, Mr. Roy was attacked and stabbed in the head and neck. After an extended hospital stay and several surgical procedures, Mr. Roy was taken off of life support.
On April 11, 2011, the Defendant was charged by bill of information with one count of second degree murder. He filed motions to suppress evidence, statements, and identification which were denied by the trial court. Subsequently, the case was heard by a twelve person jury from September 23, 2013 until September 26, 2013. Upon completion of the trial, the jury found the Defendant guilty as charged with second degree murder. He was sentenced to life imprisonment, at hard labor, without benefits, to run concurrent and coterminous with any other sentence. At that time, he motioned the trial court for an appeal.
| .¿Errors Patent
A review of the record reveals no errors patent.

Assignments of Error

In his sole assignment of error, the Defendant maintains that the evidence presented at trial was insufficient to reach a verdict finding him guilty of second degree murder.

Standard of Review

In evaluating whether evidence is constitutionally sufficient to support a conviction, this Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[1] However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The factfinder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.[2] A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.[3]
*198 l-jln addition, “[a]s a general matter, when the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification.”[4] A positive identification by only one witness is sufficient to support a conviction.[5] The reviewing court must examine the reliability of an identification according to the test set out in Manson v. Brathwaite: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.[6]
The Defendant does not argue that the State failed to prove the elements of second degree murder, but rather, that the State failed to produce a witness that identified him as the murderer. He maintains that the witnesses were only able to identify him from his clothing, and one witness, Caroline Koerner, contradicted her testimony when she initially stated that she saw his features and that he had short hair and khaki pants.
The Defendant submits that in light of Jackson v. Virginia, he is not seeking this Court’s substitution of judgment for that of the jury; however, he contends that a review of the record will reveal that a rational trier of fact would not have concluded, beyond a reasonable doubt, that he killed Mr. Roy.
I/The State argues that the Defendant’s assignment of error is without merit because it was able to establish that the police, staff from Republic, and others, chased and apprehended the defendant after the stabbing, and those events were corroborated by eyewitnesses.

Trial Witnesses

At trial, the State called several witnesses who were present at Republic on the night that Mr. Roy was stabbed. Through those witnesses, the State provided the jury with a detailed description of the stabbing incident and subsequent arrest and identification of Cameron.
Detective Tindell Murdock testified that he remembered being called to Republic on November 29, 2010, to investigate a stabbing. He arrived at approximately 3:30 a.m., and he located two witnesses while assisting the lead detective. He identified the witnesses as Seneca Johnson and Nicole Age. Det. Murdock testified that he interviewed Ms. Johnson about what she witnessed and that once he learned the Defendant was in custody in the back of a police car, he asked if she would identify a suspect. From there, Det. Murdock contacted Det. Willie Jenkins, who was also assisting in the matter. According to Det. Murdock, Det. Jenkins removed the Defendant from the vehicle and shined a light on him, and Ms. Johnson positively identified him as the suspect. Although the defense objected to any statements Det. Murdock said were made by Nicole Age, the court allowed Det. Murdock to testify that Nicole Age identified the Defendant that evening as the suspect.
On cross-examination Det. Murdock testified that the police conducted a “show-up *199 procedure” because he felt from what he learned from Ms. Johnson that she could identify the suspect regardless of Ms. Johnson stating that she never saw |sthe suspect’s face. He testified that he never spoke to the Defendant, nor did he check his hands for blood or bruising. The Detective admitted that he had no written reports from that night because he was not the lead detective.
Ms. Johnson testified at trial that she knew Mr. Roy from going out to nightclubs and that she saw him on November 29, 2010 at Republic. She further testified that she was upstairs in the V.I.P. section of the nightclub during the time that Mr. Roy was attacked. Ms. Johnson stated that she and Mr. Roy went to the bar to buy her friend a drink, and when she turned around she saw a “guy with a bald head, a red jacket” hit Mr. Roy. She claimed that everyone started to scream as he fell to the floor bleeding from his head. Ms. Johnson further stated that Mr. Roy was breathing while he was on the floor, and that she was pushed out of the way by security. She also testified that approximately thirty to forty-five minutes after the incident an NOPD officer asked her if she could identify the person who struck Mr. Roy, and she identified a male in handcuffs, dressed as she earlier described, as the perpetrator.
On cross-examination Ms. Johnson was able to remember names of her friends who were also in proximity to the stabbing so that the defense could call them as witnesses.
Also at trial, Caroline Koerner testified that she knew Mr. Roy, and she was in Republic on November 29, 2010. She testified that the Defendant pushed his way through a crowd of people as if he wanted to instigate a fight. She said that she witnessed the Defendant push Mr. Roy, and he pushed the Defendant back. She further stated that the Defendant was standing approximately one person away from her when she saw him reach into his left pocket, take out a knife, flip the knife open, place it in his right hand, walk up to Mr. Roy, and stab him in the head | fitwice. Ms. Koerner testified that she saw Mr. Roy fall to the ground, and she put her scarf on his head.
Just after the incident, Ms. Koerner testified that an officer came upstairs where she was with Mr. Roy and asked her what happened. At that time, she was taken outside of the nightclub, where she met with detectives and positively identified the Defendant.
Det. Michael Flores testified that over the radio, he learned of a stabbing at Republic, and went to the nightclub. He testified that when he arrived, he spoke with other officers at the scene and learned a victim had been stabbed, and that another victim, who had a part of his ear bitten off, helped chase down two suspects. Det. Flores was informed that the suspects were in the back of the police car.[7]
Det. Flores testified that when he went to the second floor of the nightclub, Mr. Roy’s body had already been removed, and there was blood and trash on the floor. He testified that he met with Ms. Kroener and Jeremiáh LaFleur, who both gave him a description of the suspect. He stated that he then conducted two separate show-ups, one for the Defendant and one for Jeremy Cameron.
Det. Flores left Republic and went to the hospital, where he met with the other victim, Mr. Kaiser. Mr. Kaiser told him *200 that his ear had been bitten by Jeremy Cameron, and he corroborated Ms. Kroener and Mr. LaFleur’s statements. -Det. Flores testified that he was called back to the scene from the hospital by the manager of Republic, where he located a knife on the ground where the police unit |7holding the Defendant and his brother had been earlier parked. He called the crime lab, who came back to photograph the knife.
Mr. LaFleur testified that he was employed at Republic as a bartender on the evening of November 29, 2010. He stated that on that night, he went to the second floor to take a break from the bar on the first floor where he was working. He recalled that he was standing at the left side of the bar facing the V.I.P. section when a physical altercation broke out in front of him. Mr. LaFleur stated that he witnessed a large man, whom he knew as Kevin, spreading the crowd apart in an attempt to break things up. He further testified that he saw a person in a bright red shirt give Kevin an “overhead” punch, and then he saw Kevin stumble to the ground. At that time, Mr. LaFleur then left the scene and told other Republic employees about the chaos going on upstairs.
Mr. LaFleur further testified that he was going to go back into the nightclub but ended up chasing down and apprehending the person he saw earlier in the bright red shirt. He stated that shortly after he apprehended the suspect, a policeman took over the stop. He also testified that he spoke to officers that evening and was able to provide a description of the suspect and identify the suspect as the same person whom he saw give an overhead punch to Mr. Roy.
Nicole Age testified that she was acquainted with Mr. Roy, and on the evening of November 29, 2010, he passed her with two drinks in his hands in .the V.I.P. room. She stated that he gave her a sip of one of the drinks and was walking away when a fight broke out in front of them. Mr. Roy asked “what’s going on?” and proceeded in the direction of the fight. She testified that she saw a bald man with a red shirt hit Mr. Roy in the head, and then saw Mr. Roy bleeding. She stayed with Mr. Roy until the paramedics arrived, and then she was asked by | Sdetectives not to leave. Ms. Age testified that at the scene she identified the Defendant as the man who struck Mr. Roy.
Wendy Wiltz testified at trial that she worked for the event promoter and that she knew Mr. Roy because he was a Sunday regular at Republic. She testified that she was at Republic the evening of November 29, 2010, and she was talking to Mr. Roy at the top of the stairs in the V.I.P. section when a fight broke out. She testified that Mr. Roy pushed her out- of the way, and she saw a bald man in a red shirt reaching into his boot. She stated that she grabbed a waitress, and they went behind the bar into the office and told the promoter to call for more security. When she returned, she saw Mr. Roy on the ground. She left the nightclub and later returned to retrieve her car. Upon her return she was walking across the street to get her car when she saw a knife in the street.
Desere Chachere testified that she has known the defendant since 2006 or 2007. She identified him in court. She testified that she was at Republic when the incident occurred, and she saw the Defendant and his brother Jeremy. She described her surroundings and testified that she was standing at the bar in the second floor V.I.P. section when a fight ensued. She said she and the Defendant were standing next to one another and that the Defendant was not involved in the fight, did not push anyone, and did not stab anyone.
*201 On cross-examination, Ms. Chachere testified that she saw Jeremy Cameron involved in the fight that was taking place on the stairs. She testified that at no time did the Defendant seek to assist his brother in the altercation. She left when she and Michael Cameron were ushered out by security. She further testified that she later saw the Defendant and his brother handcuffed outside of the nightclub, but never informed the authorities that the Defendant was not involved in the fight 13inside the nightclub. Ms. Chachere further stated that the Defendant was wearing a red shirt and jeans the night of the murder.
The Defendant testified at trial that he drove to Republic with his brother Jeremy and that he parked his car on a nearby street. He testified that he was at the bar, standing next to Ms. Chachere, when he saw his brother get into a fight. He also testified that he was ushered out with the crowd and was grabbed when exiting, frisked, asked by officers to show his hands, and. then placed in the back of a police car. He testified that he did not get into a fight that evening, did not have a knife, and did not have blood on his hands or his clothes.
An audio tape from a jail call revealed that the Defendant mentioned helping his brother during the incident. On cross-examination, the Defendant testified that he mentioned assisting his brother during the phone conversation, but that he only wanted the people fighting with his brother to know who he was.

Discussion

In light of Manson v. Brathwaite, supra, each eyewitness had the opportunity to see the Defendant at the time of the stabbing. The witnesses testified that, although dim, there was ample lighting in the nightclub, and they were not impaired by alcohol or in any other way to cause their attention to be disrupted. The -witnesses all gave an accurate description of the Defendant, and when asked to identify him, the witnesses were confident in their identifications, which took place within a reasonably close time to the murder.
Although the Defendant’s testimony, which was somewhat corroborated by Ms. Chachere, maintained that he did not have a knife, was not in a fight, and was grabbed by police among all of the chaos and placed in the back of a police car, the jury was also presented with numerous eyewitnesses .that contradicted his account. |inMs. Johnson, Ms. Age, Ms. Kroener and Mr. LaFleur all identified the Defendant on the evening of the murder. Even though the eyewitnesses did not give a detailed facial description of the Defendant, they were all in close proximity to him and the incident. They described, with some variation, a bald, black male, wearing a red shirt and dark pants. This testimony established that each witness had sufficient time to observe the Defendant. This Court cannot disturb the jury’s decision in weighing the credibility of the witnesses unless it is clearly contrary to the evidence, which in this case it is not.[8]
In the present case, there was sufficient evidence for the jury to find that Michael Cameron was the person who stabbed and killed Eric Roy, Jr. The evidence is overwhelming with eyewitness testimony, and the jury was able to compare the testimony to the video surveillance tapes from the evening of the murder. A review of the trial record established that the evidence was clearly sufficient for a jury to find *202 Michael Cameron guilty of second degree murder. Accordingly, his conviction and sentence are affirmed.
AFFIRMED.

. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560; State v. Green, 588 So.2d 757, 758 (La.App. 4 Cir.1991).

. State v. Mussall, 523 So.2d 1305, 1309-10 (La.1988).

. State v. McMillian, 10-0812, p. 6 (La.App. 4 Cir. 5/18/11), 65 So.3d 801, 805; State v. Huckabay, 00-1082, p. 33 (La.App. 4 Cir. *198 2/6/02), 809 So.2d 1093, 1111; State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435.

.State v. Neal, 00-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658.

. Neal, 00-0674, p. 11, 796 So.2d at 658.

. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

. The record reveals that Jeremy Cameron, the brother of Michael Cameron, was also at Republic at the time of the murder and was charged with second degree battery.

. See Harris, 99-3147, 765 So.2d at 435; Huckabay, 00-1082, 809 So.2d at 1111; McMillian, 10-0812, 65 So.3d at 805.