2016-0642 (La.App. 4 Cir. 12/7/16)
**STATE IN the INTEREST OF W.B.**

**NO. 2016–CA–0642**

Court of Appeal of Louisiana,
Fourth Circuit.

DECEMBER 7, 2016

---

Katherine M. Franks, LOUISIANA APPELLATE PROJECT, P.O. Box 1677, Abita Springs, LA 70420, COUNSEL FOR APPELLANT

Leon A. Cannizzaro, Jr., District Attorney, Donna R. Andrieu, Assistant District Attorney, Donald G. Cassells, III, Assistant District Attorney, PARISH OF ORLEANS, 619 South White Street, New Orleans, LA 70119, COUNSEL FOR APPELLEE

(Court composed of Chief Judge James F. McKay, III, Judge Roland L. Belsome, Judge Rosemary Ledet)

Judge Rosemary Ledet

This is a juvenile delinquency case. The juvenile, W.B.,[1] appeals his adjudication as a delinquent and his disposition. For the reasons that follow, we affirm the adjudication but vacate the disposition and remand for a disposition hearing.

## STATEMENT OF THE FACTS

On or about October 16, 2015, Aimee Keife's residence in New Orleans, Louisi-

---

1. Pursuant to the requirements of confidentiality of juvenile proceedings as set forth in Rules 5–1 and 5–2 of the Uniform Rules— Courts of Appeal and La. Ch.C. art. 412, the juvenile, who was fifteen at the time of the charged offense, and his family members are referred to by their initials only.

ana was burglarized. Immediately thereafter, she reported the burglary to the New Orleans Police Department ("NOPD"). By the time she needed to leave for work, the police had not arrived; thus, she canceled the call.

Thereafter, Ms. Keife's home surveillance camera recorded two individuals attempting to break into her home. On October 21, 2015, Ms. Keife was leaving her home when she saw one of the individuals from the surveillance video—later identified as W.B.—entering her neighbor's house, using a key. Ms. Keife immediately called the NOPD.

NOPD Detectives Serife Davis and Daniel Hyatt promptly were dispatched to Ms. Keife's residence. Ms. Keife provided the detectives with the surveillance video, and she identified W.B. as one of the individuals in the surveillance video.[2] The detectives apprehended W.B., handcuffed him, and placed him in the back of their patrol car. After W.B. was placed in the patrol car, his father, W.B., Sr., approached the car and explained to his son that the detectives had photographs showing W.B. looking through Ms. Keife's door.[3] Meanwhile, one of the detectives asked W.B. if they were going to find any of the stolen items in his bedroom in W.B., Sr.'s residence.[4] W.B., Sr., instructed the detectives to show the photograph to W.B. After being shown the photograph and confronted

again by his father, W.B. admitted that he was one of the individuals in the photograph. Shortly after the confession, one of the detectives asked W.B. if the clothes he was wearing in the photograph were in his bedroom. W.B. responded that the clothes were at his sister's house, which was where he was primarily residing.

## STATEMENT OF THE CASE

On November 4, 2015, the State filed a petition charging W.B. with simple burglary, in violation of La. R.S. 14:62. According to the State's petition, on October 21, 2015, W.B. entered Ms. Keife's house without authorization with the intent to commit a theft or felony therein. W.B. pleaded not guilty.

On November 10, 2015, W.B. filed an "Omnibus Motion for Discovery; Motion to Preserve Evidence; and Motion for Suppression of Statements, Evidence, and Identifications." The district court set the motion to suppress and the adjudication hearing for February 2, 2016.

After several continuances, the adjudication hearing occurred on May 3, 2016.[5] At the adjudication hearing, four witnesses testified—Ms. Keife; Detective Davis; W.B., Sr.; and Detective Hyatt. At the conclusion of the hearing, W.B. was adjudicated delinquent as a result of having committed attempted simple burglary, a violation of La. R.S. 14:27 and 14:62.[6] The district court ordered W.B. to serve six

2. The surveillance video Ms. Keife provided to police was not properly downloaded before trial. When the error was realized, Ms. Keife attempted to obtain a new copy of the video. The video, however, was no longer preserved on her surveillance system. The video, therefore, was not introduced at the adjudication hearing; rather, still-photographs taken from the video were admitted by defense counsel. On cross-examination, Ms. Keife identified the photographs as those taken from the surveillance video.

3. The confrontation between W.B. and his father was captured by the body camera one of the detectives was wearing.

4. W.B., Sr., signed a consent to search form for W.B.'s room.

5. The judgment continuing the adjudication hearing fails to mention the disposition of the motion to suppress.

6. During closing arguments, the State conceded that it did not carry its burden of proving that W.B. was guilty of burglary. The

months, suspended, with active supervised probation for one year with the following special conditions.[7] This appeal followed.

## |₄ERROR PATENT

█ Recently, this court adopted a practice of conducting an error patent review in juvenile delinquency cases. *See State in the Interest of S.J.*, 13–1025, p. 4 (La.App. 4 Cir. 11/6/13), 129 So.3d 676, 679 (citing *State in the Interest of A.H.*, 10–1673, p. 9 (La.App. 4 Cir. 4/20/11), 65 So.3d 679, 685). A review of the record for errors patent in this case reveals one. The district court failed to conduct a disposition hearing.

Louisiana Children's Code Article 892 provides, "[p]rior to entering a judgment of disposition, the court shall conduct a disposition hearing. The disposition hearing may be conducted immediately after the adjudication and shall be conducted within thirty days after the adjudication. Such period may be extended for good cause." Furthermore, La. Ch.C. art. 893 provides in pertinent part as follows:

A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.

B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not |₅admissible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.

C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.

█ This court has held that "[t]he purpose of a disposition hearing is to allow the court to hear evidence which will aid it in determining whether the juvenile is in need of treatment or rehabilitation." *State in Interest of T.E.*, 11–1172, p. 2 (La.App. 4 Cir. 9/19/12), 100 So.3d 963, 964 (citing *State ex rel. K.H.*, 98–632 (La.App. 5 Cir. 12/16/98), 725 So.2d 583). "Absent a waiver by the juvenile, the court must conduct a hearing prior to entering a judgment of disposition." *Id.* (citing *State ex rel. K.G.*, 34,535 (La.App. 2 Cir. 1/24/01), 778 So.2d

---

State, however, argued that it had proven that W.B. was guilty of attempted burglary.

7. The special conditions of W.B.'s sentence are as follows:
- The juvenile must enroll in and attend school every day, present no problems at home or school, receive no suspensions and forward copies of all report cards received to the court.
- The juvenile must have no further violations of the law. The juvenile must have no further arrests.
- The juvenile must have no drugs, alcohol or weapons in his/her possession.

- The juvenile must abide by the 6:00 p.m. curfew order on the weekdays and abide by the 8:00 p.m. curfew order on the weekends.
- The juvenile must keep the court and OJJ abreast of any change in telephone number or address. Any failure to keep the court or OJJ abreast of any changes will result in Contempt time for 15 days.
- The juvenile must abide by his parent/guardian's rules and regulations and stay away from anyone that the parent does not approve of.

716; *State in Interest of O.R.*, 96–890, p. 6 (La.App. 5 Cir. 2/25/97), 690 So.2d 200, 202). Counsel's silence and failure to object does not amount to a waiver of a juvenile's right to a disposition hearing or his right to present evidence. *State in Interest of O.R.*, 96–890 (La.App. 5 Cir. 2/25/97), 690 So.2d 200; and *K.G.*, 34,535 at p. 15, 778 So.2d at 726; *see also State in Interest of T.H.*, 14–179 (La.App. 3 Cir. 6/4/14, 18), 140 So.3d 911, 923 (finding that "there was no objection or waiver of the objection, and there was no waiver of the disposition hearing" by the juvenile; thus the matter was remanded).

After W.B. was adjudicated a delinquent, the following colloquy occurred between defense counsel and the district court judge:

THE COURT:

Regardless of any of that I am adjudicating you delinquent of that offense, okay. I don't know if you want to waive delays.

MS. FELIX [DEFENDANTS' COUNSEL]:

No, I'm just asking if you can identify him when you say this one doesn't look like him.

\* \* \*

THE COURT:

... So do we want me to give his disposition? Do you waive delays?

MS. FELIX:

Note my objection.

THE COURT:

Okay, I'll note your objection.

MS. FELIX:

To the adjudication.

THE COURT:

Ok, I will note your objection. It is ordered, adjudged, and decreed that [W.B.] is a juvenile for proper placement with the Office of Juvenile Justice. You are hereby placed with the Office of Juvenile Justice for six months. Execution of this commitment is suspended. You are going to be on one year of active probation.

Accordingly, defense counsel did not waive W.B.'s right to present evidence at a disposition hearing. Consequently, we find that the disposition must be vacated and the matter remanded for a disposition hearing in accordance with La. Ch.C. arts. 892 and 893.

## DISCUSSION

W.B. raises several issues on appeal.[8] For ease of discussion, we divide the issues presented into the following four parts: (i) admissibility of W.B.'s statements; (ii) harmless error; (iii) motion to suppress; and (iv) judgment of disposition. We address each part separately.

*Admissibility of W.B.'s statements*

W.B. contends that the district court erred in admitting W.B.'s statements into evidence because the State failed to establish his statements were made freely and voluntarily in compliance with La. Ch.C. art. 881.1.[9] W.B. asserts, and the State

**8.** On appeal, W.B. raises the following assignments of error:

1. The trial judge erred in denying the Motion to Suppress without a hearing. Trial counsel was ineffective in failing to urge the motion prior to the beginning of the adjudication hearing, denying W.B. the right to a fair trial.
2. The trial judge erred in allowing the statements made by W.B. into evidence when the state failed to establish that

the statements were either freely or voluntarily given in compliance with Ch.C. art. 881.1.
3. The trial judge erred in imposing a condition of probation in the written judgment of disposition that was not articulated at the time of the disposition hearing.

**9.** La. Ch.C. art. 881.1, which provides as follows:

does not dispute, that he was not advised of his *Miranda* rights [10] before making inculpatory statements. W.B. further contends that the detectives arranged the situation between W.B. and his father in order to elicit the confession. W.B. argues that his admission was obtained after an unconstitutional, custodial interrogation by the detectives. Thus, he contends that his confession was erroneously admitted.

■■■ In Louisiana, the admissibility of a juvenile's confession is governed by La. Ch.C. art. 881.1. A child's confession is inadmissible unless the State proves the free and voluntary nature of the statement beyond a reasonable doubt. *State in Interest of J.J.M.*, 16–347, p. 4 (La.App. 3 Cir. 11/9/16), 207 So.3d 609, 611, 2016 WL 6610375, p. *2. Louisiana jurisprudence further provides as follows:

"[Louisiana Constitution Article] I, § 13 incorporates the prophylactic rules of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which

require that a prosecutor, before using an accused's confession at trial, establish that the accused was informed of his or her rights against self-incrimination and to have an attorney present at any interrogation; that the accused fully understood the consequences of waiving those rights; and that the accused in fact voluntarily waived those rights without coercion." The constitutional privilege against self-incrimination and the constitutional right to counsel apply to juveniles as well as to adults. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *State ex rel. Coco*, 363 So.2d 207, 208 (La.1978) (recognizing that juveniles are entitled to same constitutional protections as adults).

*J.J.M.*, 16–347 at p. 4, 207 So.3d at 611, 2016 WL 6610375 at p. *2 (quoting *State v. Fernandez*, 96–2719, pp. 3–6 (La. 4/14/98), 712 So.2d 485, 486–87); *see State in Interest of S.L.*, 11–883, pp. 17–18 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 835 (holding

A. A confession made by an accused child without a knowing and voluntary waiver shall not be admissible unless the state proves beyond a reasonable doubt that it was freely and voluntarily given and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.

B. In making this determination, the court shall consider all of the following:

(1) The age of the child.

(2) The education of the child.

(3) The knowledge of the child as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and to remain silent.

(4) Whether the child is held incommunicado or allowed to consult with relatives, friends, or an attorney.

(5) Whether the child was interrogated before or after formal charges had been filed.

(6) The methods used in the interrogation.

(7) The length of the interrogation.

(8) Whether or not the child refused to voluntarily give statements on prior occasions.

(9) Whether the child has repudiated an extra-judicial statement at a later date.

10. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also State v. Hunt*, 09–1589, p. 4, n. 2 (La. 12/1/09), 25 So.3d 746, 750. In *Hunt*, the Louisiana Supreme Court noted the following:

[In *Miranda*,] the United States Supreme Court set forth the doctrine that the prosecution may not use a statement, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. These safeguards, commonly known as the *"Miranda warnings,"* are as follows: Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *Id.*

that *Miranda, supra,* held that the prosecution may not use a statement, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.).

The Louisiana Supreme Court in *Fernandez, supra,* further stated as follows:

Under the federal constitution, the determination of whether a juvenile's incriminating statements are admissible, as based on a knowing and voluntary waiver of the right against self-incrimination and the right to assistance of counsel, is made on the totality of the circumstances surrounding the interrogation. *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).... [T]he totality of the circumstances approach mandates inquiry into all the circumstances surrounding the interrogation, including "evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." [*Fare,*] 442 U.S. at 725, 99 S.Ct. at 2572.

The Louisiana Constitution requires no more. The confession of an accused of any age is valid only if it was given knowingly and voluntarily. The age of the accused, although an extremely important and extremely relevant factor in determining knowingness and voluntariness, is not absolutely determinative, and the rigid invalidation of an otherwise valid confession because the accused has not quite reached the age of seventeen has no federal or state constitutional basis.

96–2719 at pp. 5–6, 712 So.2d at 487; *see also State in Interest of S.L., supra.*

W.B., Sr., testified that the detectives showed him a photograph from the surveillance video and that he identified his son, W.B., as one of the individuals depicted in the photograph. On cross-examination, he testified that he was angry and started threatening W.B. before he knew why W.B. was arrested. W.B., Sr., explained that, at that time, he only glanced at the photograph, which was on the detective's cellphone, and assumed that W.B. was involved. When presented with the photograph in court, W.B., Sr., claimed that he did not recognize anyone. Also on cross-examination, the following colloquy occurred between defense counsel and W.B., Sr.:

Q. You glanced at the photograph and you agreed with the officer that that was your son?

A. Yes, I did.

Q. What did [W.B.] say about it?

A. He just put his head down.

Q. Did [W.B.] agree that that was him in the photograph?

A. He didn't say a thing.

Q. What was [W.B.] saying prior to that?

A. He said he wasn't down there.

Q. You heard [W.B.] saying that?

A. Yes.

During rebuttal, the State introduced and played the detective's body camera video in order to impeachment W.B., Sr. In the video, W.B., Sr., approached the patrol car and yelled into the backseat "[t]hey got your picture looking through the door.... Stop saying what you didn't do; they got you." At this time in the video, one of the detectives explains that they are about to search his bedroom and asks W.B. if they are going to find any of the stolen items in his room or at his

sister's residence. W.B., Sr., then told one of the detectives to show W.B. the photograph. As W.B. viewed the photograph, W.B., Sr., asked his son if that is him in the photograph. Simultaneously, one of the detectives said to W.B. "that's you." W.B. then admitted that he was one of the individuals in the photograph. Thereafter, one of the detectives asked W.B. if the clothes he was wearing in the photograph are in his room. W.B. responded that he believed the clothes were at his sister's house.

According to La. Ch.C. art. 881.1, the State carries the burden of proving beyond a reasonable doubt that a juvenile's confession was given freely and voluntarily. The State correctly points out that *Miranda* only applies if the defendant, while in custody, is interrogated by a law enforcement officer or agent. *State v. Bernard*, 09–1178, p. 5 (La. 3/16/10), 31 So.3d 1025, 1029. As noted above, it is undisputed that W.B. was not advised of his *Miranda* rights. The State, however, counters that *Miranda* is inapplicable. The State claims that it is arguable whether W.B. was in custody and that W.B.'s statements were made in response to his father's questioning, not police interrogation. The State contends that the body ⌊₁₂camera video supports its contention that W.B.'s admission was not the result of police interrogation. Therefore, the State contends that W.B.'s statements were admissible. We disagree.

█ A suspect is "in custody" when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. *State v. Stewart*, 13–0779, p. 10 (La.App. 4 Cir. 1/22/14), 133 So.3d 166; *see also State v. Shirley*, 08–2106, pp. 7–8 (La. 5/5/09), 10 So.3d 224, 229; [11] *see also State v. Fisher*, 97–1133, p. 6 (La. 9/9/98), 720 So.2d 1179, 1183 (noting that "[a] prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave."). Furthermore, courts have found that *Miranda* warnings are "not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest." *State v. Riley*, 15–0309 (La.App. 4 Cir. 9/30/15) (*unpub.*), 2015 WL 5771996 (citing *Shirley*, *supra* ).

█ ⌊₁₃At the time the statements were made, the detectives had physically removed W.B. from his parents' residence, handcuffed him, and placed him in the back of their patrol car. Although the State contends that W.B. was briefly detained pending an ongoing investigation, the circumstances suggest that a reasonable person would have associated the restraint as placing him in custody for purposes of *Miranda*. Having made that determination, we now turn to whether W.B. was interrogated by a law enforcement officer or agent.

---

**11.** In *Shirley*, the Louisiana Supreme Court stated as follows:

Custody is decided by two distinct inquiries: an objective assessment of the circumstances surrounding the interrogation to determine whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and, second, an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action. *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), (*citing California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)(*per curiam*), *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)(*per curiam*)). See *Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

"Interrogation" under *Miranda* includes express questioning by law enforcement as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *S.L.*, 11–883 at p. 18, 94 So.3d at 836. "Police officers are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as the statements do not result from police-initiated custodial interrogation or questioning 'reasonably likely to elicit an incriminating response.'" *S.L.*, 11–883 at p. 19, 94 So.3d at 836 (citing *State v. Ross*, 95–1798 (La. 3/8/96), 669 So.2d 384, 386).

Contrary to the State's contentions, the body camera video shows the detectives asking W.B. questions while W.B., Sr., confronts his son. Specifically, the video shows one of the detectives attempting to elicit a confession by using the consent to search form. One of the detectives explained to W.B. that his father is about to sign a consent to search form, which is akin to a search warrant, for W.B.'s bedroom. The detective further states, "Nothing's in there? You sure? You understand that a judge is going to know that you're lying if there is something in there." The detectives also ask W.B. where the clothes worn during the crime were located. Furthermore, W.B., Sr., testified that during this confrontation, he was yelling and cursing at his son and threatening him with bodily harm. Therefore, W.B. was subjected to custodial interrogation, which required a *Miranda* warning.

Considering all the evidence presented, we find that the State did not carry its burden of proving beyond a reasonable doubt that W.B.'s confession was freely and voluntarily given as required by La. Ch.C. art. 881.1. The circumstances demonstrate that W.B. was in custody and his statements were obtained pursuant to the compelling influence of the detectives and his father, W.B., Sr. Therefore, the district court erred in admitting W.B.'s statements into evidence.

*Harmless error*

Nevertheless, the erroneous admission of a defendant's involuntary confession is subject to harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In *Fulminante*, the United States Supreme Court held that the admission into evidence of an involuntary confession during trial is a "trial error." *Id.*, 499 U.S. at 307, 111 S.Ct. 1246. "Trial error may be 'quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.'" *State v. Harris*, 11–0941, pp. 19–20 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 917 (quoting *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246). In other words, an appellate court must review the remaining evidence against the defendant to determine whether the admission of the involuntary confession at trial was harmless beyond a reasonable doubt. *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246; *Harris*, 11–0941 at p. 20, 98 So.3d at 917.

We find the evidence at trial, exclusive of W.B.'s statements to detectives, was sufficient to convince a rational trier of fact beyond a reasonable doubt that W.B. was guilty of attempted burglary. The still-photographs from the surveillance video were identified by Ms. Keife, Detective Davis, and Detective Hyatt. As discussed elsewhere, Ms. Keife testified that W.B. was one of the individuals in the surveillance video attempting to burglarize her home. Detective Davis testified that on the day of the incident, Ms. Keife recognized W.B. in the back of the patrol car and identified him as one of the perpetrators in the video. Detective Hyatt testified

that he showed W.B., Sr., a photograph from the surveillance video and that W.B., Sr., identified his son. W.B., Sr., recanted his identification of his son at trial; however, he testified that on the day of the incident he identified his son as being in the surveillance video from Ms. Keife's residence. Taken together, the evidence presented was sufficient to establish beyond a reasonable doubt that W.B. was guilty of attempted burglary; thus, any alleged error in the admission of W.B.'s statements was harmless. This assignment of error is without merit.

*Motion to suppress*

W.B. contends that the district court erred in denying his motion to suppress statements without conducting a hearing on the motion. He argues that the motion was timely filed and that it is the customary practice in Orleans Parish Juvenile Court to consider motions to suppress during the adjudication hearing.

During the adjudication hearing, Detective Davis testified that W.B. admitted to being one of the individuals in the surveillance video. Defense counsel objected and stated that she "filed a motion to suppress any statements ... made because I do not believe that he [W.B.] was *Mirandized* at any point." The district court responded, "You did not request to have the motion heard. That motion is denied." Detective Davis further testified that W.B. did not admit that he attempted to burglarize Ms. Keife's home but that W.B. admitted to being in the surveillance video. He also testified that W.B. informed him that the clothes W.B. was wearing in the video were at his sister's house.

In delinquency proceedings, the juvenile may move to suppress evidence obtained in violation of the United States Constitution or the Louisiana Constitution. La. Ch.C. art. 872. "A motion may be granted without a contradictory hearing when mover is clearly entitled thereto without supporting proof. A motion shall not be denied without a contradictory hearing unless, assuming the facts alleged to be true, mover is not entitled to relief." La. Ch.C. Art. 865(C); *see also* La. C.Cr.P. art. 703.[12] Louisiana jurisprudence has held that a hearing is not required when a motion to suppress fails to allege any constitutional issues. *State v. Tapp*, 08–1262, p. 3 (La. App. 3 Cir. 4/1/09), 8 So.3d 804, 806–07.

In the present case, defense counsel's motion to suppress statements fails to allege any specific facts that demonstrate that W.B. is entitled to relief. Rather, W.B.'s motion states, in pertinent part, as follows:

Suppression is requested pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny under both the state and federal constitutions; the Due Process clause, *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); the Sixth Amendment right to counsel, *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246

---

**12.** La. C.Cr.P. art. 703 provides, in pertinent part, as follows:

D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.

E. (1) An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. ...

*See also State ex rel. J. F.,* 03–0321, p. 4 (La.App. 3 Cir. 8/6/03), 851 So.2d 1282, 1285; La.Ch.C. art. 104(1) ("[w]here procedures are not provided in [the Children's] Code, or otherwise by law, the court shall proceed in accordance with ... [t]he Code of Criminal Procedure in a delinquency proceeding.").

(1964); the Fourth Amendment, *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and all other applicable constitutional and statutory provisions.

Furthermore, the jurisprudence has recognized that "when a defendant proceeds to trial without raising an issue which was the subject of a pending pretrial motion, he waives his right to have the motion heard or ruled upon." *State v. Cooper*, 45,568, p. 20 (La.App. 2 Cir. 12/8/10), 55 So.3d 873, 884 (citing *State v. Fletcher*, 02–707, p. 5 (La.App. 5 Cir.12/30/02), 836 So.2d 557, 559; [13] *State v. Washington*, 98–69, p. 5 (La.App. 5 Cir.1/26/99), 727 So.2d 673, 676).[14] Given that defense counsel proceeded to trial without raising that W.B.'s motion was outstanding, this assignment of error is without merit.

*Ineffective assistance of counsel*

W.B contends that defense counsel was ineffective in failing to demand a hearing on the motion to suppress before the beginning of the adjudication hearing. As a result, he contends that he was denied the right to a fair trial.

Juvenile defendants are entitled to effective assistance of counsel. *See State in Interest of D. McK.*, 589 So.2d 1139, 1142 (La. App. 5th Cir. 1991) (citing *State in Interest of Jones*, 372 So.2d 779 (La. App. 4th 1979)). In *State in Interest of J.D.*, 14–0551, pp. 7–8 (La.App. 4 Cir. 12/3/14), 154 So.3d 726, 731–32, this court outlined the jurisprudence on ineffective assistance of counsel as follows:

> The general rule is that an ineffective assistance of counsel claim is more ap-

propriately raised in an application for post-conviction relief than on appeal. *State v. Brown*, 2012–0626, p. 12 (La. App. 4 Cir. 4/10/13), 115 So.3d 564, 572, 573 (citing *State v. Leger*, 2005–0011, p. 44 (La. 7/10/06), 936 So.2d 108, 142). The exception is when the record on appeal contains sufficient evidence to permit the appellate court to decide the issue, and the issue properly is raised by an assignment of error. *Id.* Under these circumstances, an appellate court may consider the issue in the interest of judicial economy. *Id.*

To support a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 94–2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337 on rehearing). The defendant must prove both elements to establish that his attorney was so ineffective as to require reversal. *State v. Hongo*, 96–2060, p. 5 La. (12/2/97), 706 So.2d 419, 422. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland* at 686, 104 S.Ct. at 2064.

*Id.* Furthermore, "the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v.*

---

**13.** In *Fletcher, supra,* the court held that "[a] defendant waives all pending motions by permitting trial to proceed without raising the issue that his pretrial motions were neither heard nor ruled upon."

**14.** In *Washington, supra,* the court found that the defendant waived his right to have the

motion to suppress considered for the following reasons: he failed to allege facts in his motion; he proceeded to trial without raising that he had an outstanding motion to suppress; and he indicated that he was satisfied with the State's response to his motion.

*Quezada*, 13–1318, p. 11 (La.App. 4 Cir. 5/21/14), 141 So.3d 906, 915 (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068; and *State v. Guy*, 97–1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236).

In the present case, W.B. failed to demonstrate that he was prejudiced by any deficiency or that the result of his adjudication hearing would have been different. At the adjudication hearing, Ms. Keife testified "I watched two boys trying to, with a hammer and a screwdriver, I guess, some kind of tools, like, trying to get the bolts out of the door and then go into the lock on the door and peeking in through the window." Ms. Keife acknowledged that she did not have a video of the burglary. She testified that "[a]s far as I know he [W.B.] only tried to break and enter my house." She, however, believed that W.B. "is the same person who broke into my house before and took things." Ms. Keife also testified that she was unaware that W.B. lived next door to her, and she later learned that W.B. primarily resided with his sister rather than his parents.

It is well-settled that a positive identification by one witness is sufficient to support a conviction. *State v. Carter*, 15–99, p. 15 (La.App. 5 Cir. 7/29/15), 171 So.3d 1265, 1276, *writ denied*, 15–1618 (La. 10/17/16), 207 So.3d 1068, 2016 WL 6302189; *State v. Cameron*, 14–0168, p. (La. App. 4 Cir. 10/15/14), 152 So.3d 196, 198. Given the evidence presented coupled with Ms. Keife's positive identification of W.B. as one of the perpetrators, we do not find that defense counsel's error, if any, undermines confidence in the outcome of the adjudication hearing. This assignment of error is without merit.

*Judgment of disposition*

W.B. contends that the trial judge erred in imposing a curfew as a condition of probation in the written judgment of disposition that was not articulated at the disposition hearing. W.B. contends that La. Ch.C. arts. 902 [15] and 903 [16] mandate that the trial judge announce the judgment of disposition in open court in the presence of the parties. W.B. further con-

---

**15.** La. Ch.C. art. 902 provides that "[a]ll parties shall be present when the court enters a judgment of disposition."

**16.** La. Ch.C. art. 903 provides in pertinent part as follows:

A. (1) Before entering a judgment of disposition, the court shall orally inform the child and shall state for the record the considerations taken into account and the factual basis therefor in imposing the particular disposition chosen.

(2) In every case or proceeding involving a judgment of disposition of a child, the court shall refrain from manifesting by any words or conduct, bias or prejudice based on race, sex, religion, national origin, age, or disability.

B. The court shall enter into the record a written judgment of disposition specifying all of the following:

(1) The offense for which the child has been adjudicated a delinquent.

(2) The nature of the disposition.

(3) The agency, institution, or person to whom the child is assigned.

(4) The conditions of probation, if applicable.

(5) Any other applicable terms and conditions regarding the disposition.

(6) The maximum duration of the disposition and, if committed to the custody of the Department of Public Safety and Corrections, the maximum term of the commitment.

\* \* \*

D. An extract of the minutes of court specifying the information required by Paragraph B of this Article and signed by the court shall be considered a written judgment of disposition.

E. The date of entry of the judgment of disposition shall be recorded on the judgment.

tends that when the disposition hearing transcript differs from the written judgment, the transcript prevails. *See State in Interest of D.D.*, 11–1384 (La.App. 3 Cir. 3/7/12), 86 So.3d 171. W.B. contends that because transcript from the disposition hearing fails to include curfew, the district court should be ordered to amend the judgment to conform to the transcript.

In *D.D., supra*, the transcript prevailed over the minute entry where the minute entry failed to include that the juvenile's confinement was to be served "without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence." *D.D.*, 11–1384 at p.5, 86 So.3d at 175. The appellate court remanded the matter to the trial court for amendment of the minute entry to accurately reflect the transcript. *Id.*

This court, however, has recognized that the district court has the authority to impose "[b]y written judgment, additional conditions of probation, including a curfew." *State in Interest of S.P.*, 11–1598, p. 2 (La.App. 4 Cir. 5/2/12), 90 So.3d 528, 531; *see also State In Interest of A.D.*, 16–0439, p. 13 (La.App. 4 Cir. 9/28/16, 13), —— So.3d ——, ——, 2016 WL 5416351, p. *7. Accordingly, we find that the inclusion in the written disposition of curfew as a special condition of W.B.'s probation does not warrant a reversal or a remand for clarification. This assignment of error lacks merit.

**DECREE**

For the foregoing reasons, the juvenile's delinquency adjudication is affirmed, but the disposition is vacated and remanded for a disposition hearing.

**ADJUDICATION AFFIRMED; DISPOSITION VACATED AND REMANDED.**