Judge Daniel L. Dysart
hAs a result of a shooting incident on November 8, 2015, D.H., who was fifteen at the time of arrest, was charged with violations of La. R.S. 14:94, Illegal use of weapons or dangerous instrumentalities, and La. R.S. 14:95.8, Illegal possession of a handgun by a juvenile. Following an adjudication hearing, the trial court found D.H. delinquent on both charged offenses. The judgment of disposition ordered that D.H. serve six months imprisonment on each count, to be served concurrently. The trial court suspended the sentences, and ordered that D.H. serve a one year period of probation, with conditions.[1]
D.H. appeals the adjudication raising three assignments of error.
BACKGROUND:
D.H. was admitted to University Hospital on November 8, 2015, with a gunshot *94 wound to his left hand. The New Orleans Police Department was notified |aand Officer Hillary Smith was dispatched to investigate. Officer Smith’s initial impression was that D.H. was the victim of a crime.
D.H.’s mother was at the hospital when Officer Smith arrived. She told him that D.H. had been missing for several days. With his mother in the room, D.H. told Officer Smith that he was at a park with some friends on Lizardi Street, when a man entered the park and began firing a gun.
As he was a juvenile, D.H. was transferred to Children’s Hospital. When Officer Smith arrived at Children’s Hospital, Detective Anthony Bakewell was already in the room with D.H. and his mother. D.H. again told the story about being shot in a park, and gave a description of the man who shot him. Detective Bakewell continued to question D.H., but when it appeared that he would not give any more information, Detective Bakewell asked D.H.’s mother to step out of the room. He did not explain to her that she had a right to remain with her son, but she willingly stepped out. After a call to the Fifth District revealed that there were no reports of gun fire in that area, an officer was dispatched to the park to inquire if anyone had heard shots or witnessed the incident. After hearing that there were no such reports, Detective Bakewell told D.H. that he knew D.H. was lying.
The two policemen stepped into the hall and discussed with what crime, if any, D.H. should be charged. The officers clearly did not believe the account that D.H. had given, and discussed whether one of his friends had accidentally shot him.
IsThe interview continued and D.H. changed his story. He told the officers that he had attempted to burglarize a home, and the homeowner shot at him. At first he said, he did not have a gun. After the detective reminded him that a technician was on the way to test for gunshot residue, D.H. said he fired back at the homeowner.
Still not convinced that D.H. was telling the truth, the detective continued to question him, and to coax him to be truthful. The detective told D.H. that he did not believe him, as he thought one of D.H.’s friends had accidentally shot him, and that D.H. was covering for the friend. Finally, D.H., crying, admitted that he had accidentally shot himself in the hand.
DISCUSSION:
Our review of the record reveals one error patent which must be addressed. La. Childrens Code art. 844 provides that the petition utilized to commence a juvenile delinquency proceeding must be verified. The petition in this case is unverified. However, courts have held that the prosecution of the juvenile ratifies the unverified petition. State in the Interest of D.J., 08-345, p. 15, (La.App. 3 Cir. 8/28/08), 995 So.2d 1, 11; see also State v. Allen, 05-1622 (La.App. 1 Cir. 3/29/06), 934 So.2d 146, 158. Additionally, the Supreme Court has noted that the proper remedy for a lack of a signature on a petition is a motion to quash. If the motion is not filed, the error is waived. State v. White, 404 So.2d 1202, 1205 (La.1981).
Thus, while our review determined that the State failed to obtain a verification of the petition, we find that the prosecution of D.H. ratified the | unverified petition. Further, as D.H. failed to file a motion to quash the petition, we deem the error to be harmless.
D.H. raises three assignments of error, one of which is that the trial court erred in not suppressing statements made by D.H. while in police custody without being cau *95 tioned as to Miranda,[2], or advised of his right to consult with his mother or other interested adult. As we find that the trial court erred in not suppressing D.H.’s statements, we pretermit discussion of the other two assignments of error.[3]
Louisiana Children’s Code art. 808 provides that “[a]ll rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court proceedings brought under this Title.”
D.H. asserts, and the body camera videos of his interrogation confirm, that he was not given Miranda warnings at any point during the interview. Thus, he argues that his statements and ultimate confession were not free and voluntary in compliance with La. Ch. Code art. 881.1.[4] The State argues that Miranda is not | .^applicable to the facts of this case as D.H. was not in custody at the time of the interview.
In Louisiana, a child’s confession is inadmissible unless the State proves beyond a reasonable doubt that the statement was given freely and voluntarily. State in the Interest of W.B., 16-0642, p. 8 (La.App. 4 Cir. 12/7/16), 206 So.3d 974, 980. Further, a suspect is considered to be “in custody” when he is placed under formal arrest or when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. State v. Stewart, 13-0779, p. 10 (La.App. 4 Cir. 1/22/14), 133 So.3d 166, 172.
In State v. Shirley, the Louisiana Supreme Court stated:
Custody is decided by two distinct inquiries: an objective assessment of the circumstances surrounding the interrogation to determine whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and freedom of action.
Shirley, 08-2106, pp. 7-8 (La. 5/5/09), 10 So.3d 224, 229, citing Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).
At the time the statements were made, D.H. was confined to a hospital bed awaiting treatment for a gunshot wound to his hand. Although not specifically restrained by the police officers, D.H. was *96 not free to leave the hospital. Initially, his mother was in the room with him, but she was asked to leave, which she did voluntarily. However, neither officer informed D.H.’s mother that she had the right to remain in the room. After his mother left, the detective told D.H. that it | ¿might be easier for him to talk without his mother present. Detective Bakewell suggested that he would not repeat what D.H. told him, but that D.H. needed to tell him the truth.
It is clear that the detective at first believed that D.H. was the victim, and was covering for his friends who may have accidentally shot him. However, after continuing to question D.H., and telling him that his story was not believable, D.H. changed his story and confessed to attempting to burglarize a home. At that point, as D.H. had confessed to a crime, the detective should have stopped any further questioning, even if he did not believe this second version of events. However, instead of terminating any questioning, Detective Bakewell continued to question D.H.’s story, and eventually got D.H. to confess to shooting himself in the hand.
Considering all the evidence presented, we find that the State failed to carry its burden of proving beyond a reasonable doubt that D.H.’s statements and ultimate confession were given freely and voluntarily as required by La. Ch. Code art. 881.1. Rather, the evidence proves that D.H. was in a custodial situation and that his statements were obtained due to the compelling influence of the police officers. Thus, we find the juvenile court erred in not suppressing D.H.’s statements.
Nonetheless, we must further determine if the admission of the subject statements amounts to harmless error. Arizona v. Fulminante, 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In that case, the Supreme Court held that the admission into evidence of an involuntary confession during trial is a “trial error.” Id., 499 U.S. at 307, 111 S.Ct. 1246. “Trial error may be ‘quantitatively assessed in the context of other evidence presented in order to determine whether its admission |7was harmless beyond a reasonable doubt.’” State in the Interest of W.B., 16-0642, p. 14-15, 206 So.3d at 983; State v. Harris, 11-0941, pp. 19-20 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 917 (quoting Fulminante, 499 U.S. at 307-08), 111 S.Ct. 1246). Accordingly, it is the duty of the reviewing court to consider the remaining evidence against the defendant to determine whether the admission of the involuntary confession at trial was harmless beyond a reasonable doubt. Fulminante, 499 U.S. at 310, 111 S.Ct. 1246; State in the Interest of W.B., 16-0642, p. 14-15, 206 So.3d at 983.
Considering that the only evidence presented by the State was the testimony of the officers who were present at the hospital and conducted the interviews with D.H., we cannot say that the admission of the statements was harmless error.[5]
Accordingly, as we find that the inculpa-tory statements made by D.H, as he waited for medical treatment in a hospital bed should have been suppressed, we therefore find there is insufficient evidence to adjudicate him delinquent. The judgment of the juvenile court is reversed.
REVERSED

. Special conditions: Compulsory school attendance, with no suspensions or expulsions; no further law violations; no drug, alcohol or weapon possession; no association with others who have drugs, alcohol or weapons; curfew compliance; mental health counseling; drug testing; participation in any recommended OJJ services.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. D.H. also questions the sufficiency of the evidence and whether he can be adjudicated delinquent solely on the basis of his uncorroborated confession.

. La. Ch. Code art. 881.1 provides:
A. A confession made by an accused child without a knowing and voluntary waiver shall not be admissible unless the state proves beyond a reasonable doubt that it was free and voluntarily given and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
B. In making this determination, the court shall consider all of the following:
(1)The age of the child.
(2) The education of the child.
(3) The knowledge of the child as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and to remain silent.
(4) Whether the child is held incommunicado or allowed to' consult with relatives, friends, or an attorney.
(5) Whether the child was interrogated before or after formal charges had been filed.
(6) The methods used in the interrogation.
(7) The length of the interrogation.
(8) Whether or not the child refused to voluntarily give statements on prior occasions.
(9) Whether the child has repudiated an extra-judicial statement at a later date.

. In its opening statement, the State indicated it would introduce the results of a gunshot residue test, but ultimately the test was not introduced.